**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Universal Cooperatives, Inc., *et al.*[1] | Case No. 14-11187 (MFW) |
| Debtors. | Jointly Administered |
| | Sale Objection Deadline: November 10, 2014 at 4:00 p.m. (ET) |
| | Contract Objection Deadline: November 10, 2014 at 4:00 p.m. (ET) |
| | Ref. Docket Nos.: 425, 499, 580 & 581 |

**NOTICE OF POSSIBLE ASSUMPTION AND ASSIGNMENT OF CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES
IN CONNECTION WITH SALE**

**COUNTERPARTIES TO THE POTENTIAL ASSUMED CONTRACTS, PLEASE TAKE NOTICE OF THE FOLLOWING:**

1. On September 9, 2014, Universal Cooperatives, Inc. and its affiliated debtors and debtors in possession in the above-captioned cases (each, a "Debtor," and collectively, the "Debtors") filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") their motion [Docket No. 425] (the "Motion")[2] for entry of (A) an order (the "Bidding Procedures Order") (i) scheduling a hearing (the "Sale Hearing") on approval of the proposed sale (the "Sale") of a certain parcel of real property located at 1300 Corporate Center Curve, Eagan, Minnesota 55121 (the "Real Property"), free and clear of all liens, claims, encumbrances, and other interests, to a potential stalking horse purchaser (a "Stalking Horse Purchaser") or, absent any Stalking Horse Purchaser or in the event the Stalking Horse Purchaser is not the Prevailing Bidder, then to the Prevailing Bidder, and authorizing the assumption and assignment of certain executory contracts and unexpired leases (each, a "Potential Assumed Contract," and collectively, the "Potential Assumed Contracts") in connection therewith; (ii) authorizing and approving certain proposed bidding procedures for the Sale (collectively, the "Bidding Procedures," a copy of which is attached as Exhibit 1 to the Bidding Procedures Order), certain proposed assumption and assignment procedures for the Potential Assumed Contracts (collectively, the "Assumption and Assignment Procedures"), certain bid protections for the selected Stalking Horse Purchaser, including a Break-Up Fee, and the form and manner of notice thereof; and (iii) authorizing the retention and compensation of a broker (the "Broker") to market and sell the Real Property; and (B) an order (the "Sale Order") (i) authorizing and approving the Debtors' entry into an asset purchase agreement for the Real

---

[1] The Debtors and the last four digits of their federal tax identification number are: Universal Cooperatives, Inc. (2405); Heritage Trading Company, LLC (0512); Bridon Cordage LLC (0985); Universal Crop Protection Alliance, LLC (1532); Agrilon International, LLC (7234); and Pavalon, Inc. (1433). The location of the corporate headquarters for Universal Cooperatives, Inc.; Universal Crop Protection Alliance, LLC; Agrilon International, LLC; and Pavalon, Inc. is 1300 Corporate Center Curve, Eagan, MN 55121. The location of the corporate headquarters for Heritage Trading Company, LLC is 11020 NW Ambassador Drive, Kansas City, MO 64153. The location of the corporate headquarters for Bridon Cordage LLC is 909 E. 16th Street, Albert Lea, MN 56007.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion. Any summary of the Bidding Procedures and the Bidding Procedures Order contained herein is qualified in its entirety by the actual terms and conditions thereof. To the extent that there is any conflict between any such summary and such actual terms and conditions, the actual terms and conditions shall control.

Property with a selected Stalking Horse Purchaser or, absent any Stalking Horse Purchaser or in the event the Stalking Horse Purchaser is not the Prevailing Bidder, then the Prevailing Bidder; (ii) authorizing and approving the Sale, free and clear of all liens, claims, encumbrances, and other interests; (iii) authorizing and approving the assumption and assignment of the Selected Assumed Contacts (as defined below) in connection therewith; and (iv) granting related relief

2. On September 30, 2014, the Bankruptcy Court entered the Bidding Procedures Order [Docket No. 499].  Pursuant to the Bidding Procedures Order, in the event that the Debtors timely receive one or more Qualifying Bids for the Real Property other than the selected Stalking Horse Purchaser's Qualifying Bid, the Auction shall be held at the Real Property, 1300 Corporate Center Curve, Eagan, Minnesota 55121, on **November 13, 2014, beginning at 10:00 a.m. (CT)**, or such other location as the Debtors determine, in consultation with the Official Committee of Unsecured Creditors (the "Committee"), on email notice to the Auction Notice Parties.

3. On October 29, 2014, the Debtors entered into a Stalking Horse APA with Interstate Companies, Inc., the selected Stalking Horse Purchaser, and filed a notice of selection of such Stalking Horse Purchaser in connection with the Motion [Docket No. 580].  Attached thereto as Exhibit A was a copy of the Stalking Horse APA.  On October 30, 2014, the Bankruptcy Court entered an order authorizing the Debtors to provide a Break-Up Fee to the Stalking Horse Purchaser in the amount of $20,000 (the "Break-Up Fee Order") [Docket No. 581].  If no timely Qualifying Bids other than the Stalking Horse Purchaser's Qualifying Bid are submitted on or before the Bid Deadline, the Debtors shall not hold the Auction and shall request at the Sale Hearing that the Bankruptcy Court approve the Stalking Horse APA, the transaction contemplated thereunder, and the sale of the Real Property to the Stalking Horse Purchaser.

4. The Prevailing Bid and any Second-Highest Bid (or if no Qualifying Bid other than that of the Stalking Horse Purchaser is received, then the Stalking Horse APA) will be subject to Bankruptcy Court approval.  The Sale Hearing to consider approval of the Prevailing Bid and any Second-Highest Bid (or if no Qualifying Bid other than that of the Stalking Horse Purchaser is received, then the Stalking Horse APA) shall take place on **November 18, 2014 at 2:00 p.m. (ET)**, before the Honorable Mary F. Walrath, United States Bankruptcy Judge, 824 North Market Street, 5th Floor, Courtroom No. 4, Wilmington, Delaware 19801.  The Debtors may, in consultation with the Committee, designate the Second-Highest Bid (and the corresponding Second-Highest Bidder) to purchase the Real Property, without the need for further order of the Bankruptcy Court and without the need for further notice to any interested parties, in the event that the Prevailing Bidder does not close the Sale.  The Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a notice on the docket of the Debtors' chapter 11 cases.

5. To facilitate the Sale, the Debtors may seek to assume and assign to the Stalking Horse Purchaser (or if the Stalking Horse Purchaser is not the Prevailing Bidder, then to the Prevailing Bidder) certain Potential Assumed Contracts in accordance with the Assumption and Assignment Procedures approved pursuant to the Bidding Procedures Order.  The Potential Assumed Contracts that the Debtors may, but are not required to, seek to assume and assign in connection with either the Stalking Horse APA or a Modified APA, and the corresponding cure amount (each, a "Cure Amount"), if any, that the Debtors believe is required to be paid to the applicable counterparty (each, a "Counterparty," and collectively, the "Counterparties") to each Potential Assumed Contract under section 365(b)(1)(A) and (B) of the Bankruptcy Code, are

2

identified on Exhibit 1 attached hereto.  For the avoidance of doubt, the Stalking Horse Purchaser has not indicated its affirmative intent to seek assumption and assignment of each Potential Assumed Contract listed on Exhibit 1 hereto at this time, but such Potential Assumed Contracts are listed herein to provide sufficient notice to each Counterparty regarding the respective Cure Amounts associated with such Potential Assumed Contracts.

**6.    If a Counterparty objects to the Cure Amount for its Potential Assumed Contract, the Counterparty must file with the Bankruptcy Court and serve on the Contract Objection Notice Parties (as defined below) a written objection (a "Contract Objection").  Any Contract Objection shall:  (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Rules; (iii) be filed with the Clerk of the Bankruptcy Court, 824 N. Market Street, 3rd Floor, Wilmington, DE 19801, together with proof of service, on or before 4:00 p.m. (ET) on November 10, 2014 (the "Contract Objection Deadline"); (iv) be served, so as to be actually received on or before the Contract Objection Deadline, upon the Contract Objection Notice Parties; and (v) state with specificity the grounds for such objection, including, without limitation, the fully liquidated cure amount that the Counterparty believes is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code for the Potential Assumed Contract, along with the specific nature and dates of any alleged defaults, the pecuniary losses, if any, resulting therefrom, and the conditions giving rise thereto.  The "Contract Objection Notice Parties" are as follows: (i) co-counsel to the Debtors: (a) Foley & Lardner LLP, 321 North Clark Street, Suite 2800, Chicago, IL 60654 (Attn: Michael J. Small, Mark Prager, and Emil P. Khatchatourian) and (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801 (Attn: Robert S. Brady, Andrew L. Magaziner, and Travis G. Buchanan); (ii) counsel to the Committee: Lowenstein Sandler LLP, 65 Livingston Avenue, Roseland, NJ 07068 (Attn: Sharon L. Levine, Esq.); and (iii) counsel to Ameritas: Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, DE 19801 (Attn: Etta R. Mayers, Esq.).**

7.    As soon as practicable after the selection of the Prevailing Bidder, and in no event later than one (1) business day after the date of the Auction, the Debtors shall file with the Bankruptcy Court and serve, by overnight delivery, a notice on the Counterparties to those Potential Assumed Contracts selected by the Prevailing Bidder for assumption and assignment (such selected Potential Assumed Contracts, the "Selected Assumed Contracts"), which  shall identify such Prevailing Bidder and the Selected Assumed Contracts, and the Counterparties shall file any Contract Objections solely on the basis of adequate assurance of future performance not later than three (3) business days thereafter.

8.    At the Sale Hearing, the Debtors will seek Court approval of their assumption and assignment to the Stalking Horse Purchaser (or if the Stalking Horse Purchaser is not the Prevailing Bidder, then to the Prevailing Bidder) of only those Selected Assumed Contracts that have been selected by the Prevailing Bidder.  The Debtors and their estates reserve any and all rights with respect to any Potential Assumed Contracts that are not ultimately designated as Selected Assumed Contracts.

**9.    If no Contract Objection is timely received with respect to a Selected Assumed Contract:  (i) the Counterparty to such Selected Assumed Contract shall be deemed to have consented to the assumption by the Debtors and assignment to the Stalking Horse Purchaser (or if the Stalking Horse Purchaser is not the Prevailing Bidder, then to the Prevailing Bidder) of the Selected Assumed Contract, and be forever barred from**

3

**asserting any objection with regard to such assumption and assignment (including, without limitation, with respect to adequate assurance of future performance by any Stalking Horse Purchaser (or if the Stalking Horse Purchaser is not the Prevailing Bidder, then by the Prevailing Bidder); (ii) any and all defaults under the Selected Assumed Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code; and (iii) the Cure Amount for such Selected Assumed Contract shall be controlling, notwithstanding anything to the contrary in such Selected Assumed Contract, or any other related document, and the Counterparty shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Selected Assumed Contract against the Debtors and their estates or the Stalking Horse Purchaser (or if the Stalking Horse Purchaser is not the Prevailing Bidder, then against the Prevailing Bidder), or the property of any of them, that existed prior to the entry of the Sale Order.**

10. To the extent that the parties are unable to consensually resolve any Contract Objection prior to the commencement of the Sale Hearing, including, without limitation, any dispute with respect to the cure amount required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code (any such dispute, a "Cure Dispute"), such Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be fixed by the Bankruptcy Court; provided, however, that if the Contract Objection relates solely to a Cure Dispute, the Selected Assumed Contract may be assumed by the Debtors and assigned to the Stalking Horse Purchaser (or if the Stalking Horse Purchaser is not the Prevailing Bidder, then to the Prevailing Bidder) provided that the cure amount that the Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Counterparty) is deposited in a segregated account by the Debtors pending the Bankruptcy Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

11. Copies of the Motion, the Bidding Procedures, the Bidding Procedures Order, the Break-Up Fee Order and the Stalking Horse APA may be obtained by parties in interest free of charge on the dedicated webpage related to these chapter 11 cases (http://cases.primeclerk.com/ucoop) maintained by the Debtors' claims and noticing agent, Prime Clerk LLC. Copies of such documents are also available for inspection during regular business hours at the Clerk of the Bankruptcy Court, 824 N. Market Street, 3rd Floor, Wilmington, DE 19801, and may be viewed for a fee on the internet at the Bankruptcy Court's website (http://www.deb.uscourts.gov/) by following the directions for accessing the ECF system on such website.

4

| | |
|---|---|
| Dated: November 4, 2014<br>Wilmington, Delaware | YOUNG CONAWAY STARGATT & TAYLOR, LLP<br><br>*/s/ Andrew L. Magaziner*<br>Robert S. Brady (No. 2847)<br>Andrew L. Magaziner (No. 5426)<br>Travis G. Buchanan (No. 5595)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600<br>Facsimile: (302) 571-1253<br><br>-and-<br><br>FOLEY & LARDNER LLP<br>Mark L. Prager<br>Michael J. Small<br>Emil P. Khatchatourian<br>321 North Clark Street, Suite 2800<br>Chicago, IL 60654-5313<br>Telephone: (312) 832-4500<br>Facsimile: (312) 832-4700<br><br>*Counsel to the Debtors and Debtors in Possession* |

5