IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Universal Cooperatives, Inc., *et al.*[1] | Case No. 14-11187 (MFW) |
| Debtors. | Jointly Administered |
| | Hearing Date: December 18, 2014 at 2:00 p.m. (ET)<br>Obj. Deadline: December 9, 2014 at 4:00 p.m. (ET) |

**DEBTORS' SECOND MOTION FOR ENTRY OF AN ORDER, PURSUANT
TO SECTION 1121(d) OF THE BANKRUPTCY CODE, EXTENDING THE
EXCLUSIVE PERIODS FOR THE FILING OF A CHAPTER 11 PLAN
AND THE SOLICITATION AND ACCEPTANCE THEREOF**

Universal Cooperatives, Inc. and its affiliated debtors and debtors in possession in the above-captioned cases (each a "Debtor" and, collectively, the "Debtors") hereby submit this motion (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), pursuant to section 1121(d) of title 11 of the United States Code (the "Bankruptcy Code"), further extending the Exclusive Periods (as defined below) for the filing of a chapter 11 plan and solicitation of acceptances thereof. In support of this Motion, the Debtors respectfully represent as follows:

**JURISDICTION**

1.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core

---

[1] The Debtors and the last four digits of their federal tax identification number are: Universal Cooperatives, Inc. (2405); Heritage Trading Company, LLC (0512); Bridon Cordage LLC (0985); Universal Crop Protection Alliance, LLC (1532); Agrilon International, LLC (7234); and Pavalon, Inc. (1433). The location of the corporate headquarters for Universal Cooperatives, Inc.; Universal Crop Protection Alliance, LLC; Agrilon International, LLC; and Pavalon, Inc. is 1300 Corporate Center Curve, Eagan, MN 55121. The location of the corporate headquarters for Heritage Trading Company, LLC is 11020 NW Ambassador Drive, Kansas City, MO 64153. The location of the corporate headquarters for Bridon Cordage LLC is 909 E. 16th Street, Albert Lea, MN 56007.

proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory and legal predicates for the relief requested herein are section 1121(d) of the Bankruptcy Code, Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9006-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## BACKGROUND

3. On May 11, 2014 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned cases (the "Chapter 11 Cases").

4. On May 28, 2014, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") [Docket No. 89].  No trustee or examiner has been appointed in these Chapter 11 Cases.  The Debtors continue to operate their businesses and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. Additional information regarding the Debtors' business and the events leading up to the Petition Date can be found in the *Declaration of Dennis Gyolai in Support of First Day Motions* [Docket No. 3], which is incorporated herein by reference.

6. On September 2, 2014, the Debtors filed the *Debtors' Motion for Entry of an Order, Pursuant to Section 1121(d) of the Bankruptcy Code, Extending the Exclusive Periods for the Filing of a Chapter 11 Plan and the Solicitation and Acceptance Thereof* [Docket No. 415] (the "First Extension Motion"), thereby seeking to extend the periods within which the

01:16323926.4

2

Debtors, alone, may file a chapter 11 plan and solicit acceptances thereof by approximately ninety (90) days. On September 19, 2014, the Court entered an order granting the relief requested in the First Extension Motion [Docket No. 458].

## RELIEF REQUESTED

7. By this Motion, the Debtors request, pursuant to section 1121(d)(1) of the Bankruptcy Code, entry of an order further extending, by approximately ninety (90) days, the periods within which the Debtors, alone, may file a chapter 11 plan and solicit acceptances thereof. Unless extended, the Debtors' Plan Period and Solicitation Period (each as defined below) will expire on December 8, 2014, and February 5, 2015, respectively.[2] The Debtors seek to extend the Plan Period and Solicitation Period through and including March 9, 2015, and May 6, 2015, respectively, without prejudice to the Debtors' right to seek further extensions of both periods, as may be appropriate under the circumstances. This is the Debtors' second request for an extension of the Exclusive Periods.

## BASIS FOR RELIEF REQUESTED

8. Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after commencement of a chapter 11 case during which a debtor has the exclusive right to propose and file a chapter 11 plan (the "Plan Period"). 11 U.S.C. § 1121(b). Section 1121(c)(3) provides that, if a debtor has not filed a plan that has been accepted by each class of claims or interests that is impaired under the plan before 180 days after commencement of a chapter 11 case (the "Solicitation Period" and, together with the Plan Period, the "Exclusive Periods"), any party in interest may file a competing plan. 11 U.S.C. § 1121(c)(3).

---

[2] By operation of Local Rule 9006-2, the Plan Period and Solicitation Period are automatically extended until such time as the Court has had an opportunity to consider and act upon the relief requested herein.

01:16323926.4

3

## SECTION 1121(d) OF THE BANKRUPTCY CODE PERMITS THE COURT TO EXTEND THE EXCLUSIVE PERIODS FOR "CAUSE"

9. The Exclusive Periods are designed to afford a debtor a full and fair opportunity to propose a consensual plan and solicit acceptances of such plan, without disruption to the administration of the estate that may result from the filing of competing plans by non-debtor parties. To this end, where the Exclusive Periods prove to be an unrealistic timeframe for filing and soliciting acceptances of a meaningful chapter 11 plan that would garner support from parties in interest, section 1121(d) of the Bankruptcy Code allows the Court to extend such Exclusive Periods for "cause." 11 U.S.C. § 1121(d). Although the Bankruptcy Code does not define the term "cause," the legislative history indicates that it is intended to be a flexible standard to balance the competing interests of a debtor and its creditors. See H.R. Rep. No. 95-595, at 231-32 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 6191 (noting that Congress intended to give bankruptcy courts flexibility to protect a debtor's interests by allowing an unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest).

10. Congress built flexibility into section 1121 of the Bankruptcy Code to give a debtor a sufficient opportunity to stabilize its business operations at the outset of its chapter 11 case and to negotiate an effective plan with its creditors. See In re Newark Airport/Hotel Ltd. P'ship, 156 B.R. 444, 451 (Bankr. D.N.J.), aff'd, 155 B.R. 93 (D.N.J. 1993) (noting that Congress designed chapter 11 provisions to enable a debtor to remain in control for some period of time, thereby making reorganization an attractive alternative to financially troubled companies); Gaines v. Perkins (In re Perkins), 71 B.R. 294, 297–98 (W.D. Tenn. 1987) (Congress designed section 1121 to give the debtor time to reach an agreement with its creditors regarding a plan of reorganization).

01:16323926.4

11. It is well established that the decision to extend the Exclusive Periods is left to the sound discretion of the Court and should be based upon the facts and circumstances of a particular case.[3] See First Am. Bank of N.Y. v. Sw. Gloves & Safety Equip., Inc., 64 B.R. 963, 965 (D. Del. 1986); In re Reetz, 61 B.R. 412, 414 (Bankr. W.D. Wis. 1986). In making the determination to affirm or deny a request to extend the Exclusive Periods for "cause," courts have considered a variety of factors, including the following:

(i) The size and complexity of the debtor's case;

(ii) The necessity of sufficient time to negotiate and prepare adequate information;

(iii) The existence of good-faith progress towards reorganization;

(iv) Whether the debtor is paying its debts as they become due;

(v) Whether the debtor has made progress negotiating with creditors;

(vi) The length of time a case has been pending;

(vii) Whether the debtor is seeking an extension to pressure creditors; and

(viii) Whether or not unresolved contingencies exist.

In re Cent. Jersey Airport Servs., LLC, 282 B.R. 176, 184 (Bankr. D.N.J. 2002) (citations omitted); see also In re McLean Indus., Inc., 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) (citing to most of the factors listed above in determining whether to extend the exclusive periods); In re United Press Int'l, Inc., 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (holding that the debtor showed cause to extend its exclusive period based upon certain of the above-quoted factors).

---

[3] Although the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") amended section 1121(d) of the Bankruptcy Code by prohibiting extensions of the Exclusive Periods beyond eighteen and twenty months, respectively, of the date of the order for relief, there was no revision to the standards for obtaining interim extensions. Accordingly, pre-BAPCPA case law continues to apply and must be examined in the context of the instant cases.

01:16323926.4

12. As set forth herein, the Debtors submit that the facts and circumstances of these Chapter 11 Cases justify extending the Exclusive Periods to provide the Debtors with an unimpeded opportunity to confirm the contemplated plan of liquidation.

### CAUSE EXISTS FOR AN EXTENSION OF THE EXCLUSIVE PERIODS IN THESE CHAPTER 11 CASES

13. Since the commencement of these Chapter 11 Cases, the Debtors' management and professional advisors have devoted a significant amount of effort towards ensuring a smooth transition of the Debtors' operations into chapter 11. Furthermore, since the Petition Date, the Debtors and their advisors have devoted a substantial amount of time, energy and resources toward a number of critical matters in these Chapter 11 Cases. Specifically, the Debtors and their professionals have focused on, among other things: (i) resolving issues related to the Debtors' post-petition financing arrangements (including securing replacement financing post-petition); (ii) coordinating tasks associated with the sales of (a) substantially all of the assets of Debtors Bridon Cordage LLC and Heritage Trading Company, LLC and certain assets of Universal (collectively, the "Target Assets"), (b) that certain parcel of real property located at 1300 Corporate Center Curve, Eagan, Minnesota 55121 (the "Real Property"), and (c) valuable assets of Debtors Universal Crop Protection Alliance, LLC and Agrilon International, LLC (collectively with the Target Assets and the Real Property, the "Sale Assets"); (iii) negotiating the underlying documents and other instruments related to the foregoing sales and working with the Committee's professionals to coordinate the logistics and timing of the respective sale processes; (iv) finalizing the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules") and preparing amended versions thereof as necessary; (v) winding down the operations of the Debtors' foreign, non-debtor affiliates and negotiating and resolving disputes with various creditors and constituencies abroad;

(vi) implementing procedures and preparing the documents necessary to terminate the Debtors' 401(k) plan; (vii) reviewing and analyzing the claims filed in these cases, including, but not limited to, filing two omnibus objections to claims; (viii) reviewing and analyzing substantial pension liabilities asserted against each of the Debtors and negotiating with the Pension Benefit Guaranty Corporation with respect thereto; (ix) negotiating and resolving certain disputes with Monsanto Company and, in furtherance thereof, consummating a sale of certain registrations and rights in connection therewith; (x) reviewing and analyzing the assets and liabilities of each Debtor to design and implement distribution models to be incorporated in an eventual chapter 11 plan; and (xi) ensuring that the estates continue to be competently and efficiently managed during the pendency of these Chapter 11 Cases.  Moreover, the Debtors have begun formulating a plan of liquidation, which they intend to file in the near term, either jointly with the Committee or with the Committee's support.  Under these circumstances, the Debtors submit that the requested extensions are both appropriate and necessary to afford the Debtors with sufficient time to adequately prepare a viable liquidation plan in these Chapter 11 Cases.

**A.    The Size, Complexity, and Duration of the Chapter 11 Cases**

14.    Only six months into these Chapter 11 Cases, the Debtors have devoted substantial resources to, among other things, addressing critical case management issues while simultaneously conducting three separate sale processes and efficiently winding down their remaining business operations, including those overseas.  Given the scope of the Debtors' geographic operations, the complex nature of the Debtors' businesses, and the dual interest in maximizing value for the Sale Assets while also operating in the ordinary course and efficiently administering these Chapter 11 Cases, the Debtors have had insufficient time, at this point, to present and prosecute a viable liquidation plan.  Accordingly, the Debtors submit that the

complexity and relatively short duration of these Chapter 11 Cases warrant the extension of the Exclusive Periods.

**B.    The Necessity of Sufficient Time to Negotiate and Prepare Adequate Information**

15.    Since the Petition Date, the Debtors and their professionals have focused much of their time, energy, and resources on smoothly transitioning into chapter 11 and winding down the business operations of certain Debtors and foreign non-debtor affiliates. To that end, the Debtors prepared and prosecuted numerous motions for first and second day relief, and prepared and filed their Schedules and required operating reports. The Debtors and their professionals have focused most of their time and resources on the marketing and sales processes for the Sale Assets and on winding down foreign business units. Moreover, since the Committee was appointed, the Debtors have actively engaged the Committee and its advisors when making critical decisions and directing business strategies. As the anticipated proceeds from the Sale Assets and other recoveries will constitute a material source of distributions under an eventual chapter 11 plan, the Debtors believe that it is reasonable to request additional time to negotiate and finalize a plan of liquidation, and to collaborate with the Committee in conjunction therewith.

16.    Furthermore, the Committee has requested a significant document production with which the Debtors have been complying and continue to do so. Negotiations regarding the terms of a plan of liquidation with the Committee will be difficult to complete unless and until the Committee feels it is in a position of sufficient information. As the Debtors are still in the process of responding to the Committee's document production request, more time is necessary to negotiate with the Committee and prepare adequate information with respect to the contemplated plan of liquidation. Accordingly, the Debtors submit that this factor supports the relief requested.

### C. Good-Faith Progress Made in These Chapter 11 Cases

17. The Debtors have made significant and material progress in these Chapter 11 Cases. In particular, the Debtors have complied with their reporting and disclosure requirements under the Bankruptcy Code, including the preparation and filing of the Schedules and the timely filing of monthly operating reports. Additionally, the Debtors secured replacement post-petition financing, sold substantially all of the assets held by their foreign non-debtor affiliate located in France, evaluated all potential strategic and financial buyers in connection with the asset sales, and held robust auctions for the Target Assets and the Real Property, respectively. Accordingly, the Debtors submit that they have made good-faith progress in these Chapter 11 Cases, which weighs in favor of extending the Exclusive Periods.

### D. The Debtors Are Paying Their Debts as They Come Due

18. As the Debtors continue to make timely payment on their undisputed post-petition obligations, the requested extension of the Exclusive Periods will not prejudice the legitimate interests of post-petition creditors. As such, the Debtors submit that this factor weighs in favor of extending the Exclusive Periods.

### E. The Debtors Are Not Seeking an Extension to Pressure Creditors

19. The Debtors have no ulterior motive in seeking an extension of the Exclusive Periods. The Debtors believe that they have worked diligently since the Petition Date to maximize value for creditors, and require the requested extension to bring these Chapter 11 Cases to an orderly and efficient conclusion. The Debtors are not seeking an extension to pressure the creditors or other parties-in-interest. Indeed, the Debtors have been in regular contact with the Committee's professionals throughout the chapter 11 process, and have worked collaboratively to achieve common goals. Moreover, given the intervening holidays, the Debtors are concerned that one or more members of the Committee may not be available to provide

01:16323926.4

essential input during the course of substantive negotiations with the Committee regarding a plan of liquidation. To that end, the Debtors will continue to work with the Committee's professionals to draft and finalize a consensual or joint plan of liquidation. As such, the Debtors are not seeking the relief herein to pressure creditors.

**F.    Termination of the Debtors' Exclusive Periods Would Adversely Impact These Chapter 11 Cases**

20.    The Debtors believe that terminating the Exclusive Periods would adversely impact the Debtors' efforts to preserve and maximize the value of these estates and the progress made thus far in these Chapter 11 Cases. In effect, if this Court were to deny the Debtors' request for an extension of the Exclusive Periods, any party-in-interest would be free to propose a chapter 11 plan for the Debtors. Such a ruling would foster a chaotic environment with no central focus and cause substantial, if not irreparable, harm to the Debtors' efforts to preserve and maximize the value of their estates. To be sure, the Debtors seek the relief requested herein to ensure, to the furthest extent possible, a consensual plan of liquidation with the Committee.

21.    Based on the foregoing, the Debtors respectfully submit that cause exists to further extend the Debtors' Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code. Specifically, the Debtors request that the Plan Period and Solicitation Period be extended through and including March 9, 2015, and May 6, 2015, respectively, without prejudice to the Debtors' right to seek further extensions of the Exclusive Periods, as may be appropriate under the circumstances.

## **NOTICE**

22.     Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the Committee; and (c) those parties that have formally filed requests for notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

[Remainder of Page Intentionally Left Blank]

# **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as <u>Exhibit A</u>, (i) extending the Plan Period through and including March 9, 2015, (ii) extending the Solicitation Period through and including May 6, 2015, and (iii) granting such other and further relief as the Court deems just and proper.

| | |
|---|---|
| Dated: November 25, 2014<br>Wilmington, Delaware | YOUNG CONAWAY STARGATT & TAYLOR, LLP<br><br>*/s/ Andrew L. Magaziner*<br>Robert S. Brady (No. 2847)<br>Andrew L. Magaziner (No. 5426)<br>Travis G. Buchanan (No. 5595)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600<br>Facsimile: (302) 571-1253<br><br>-and-<br><br>FOLEY & LARDNER LLP<br>Mark L. Prager<br>Michael J. Small<br>Emil P. Khatchatourian<br>321 North Clark Street, Suite 2800<br>Chicago, IL 60654-5313<br>Telephone: (312) 832-4500<br>Facsimile: (312) 832-4700<br><br>*Counsel to the Debtors and Debtors in Possession* |